## TEXAS & P. RY. CO. *v.* INTERSTATE TRANSP. CO.

*(Circuit Court, E. D. Louisiana.* May 13, 1890.)

**NAVIGABLE WATERS—BRIDGE—INJUNCTION.**
  In a suit to restrain defendant from passing its tow-boats through the draw of plaintiff's bridge, at high water, with more than two barges in tow, it appeared that the bridge-seat at the eastern end consisted of wooden piles, and that there was no protection of any kind to prevent boats from colliding with the piles, or, in case of high water, with the bridge itself. The pier on which the draw turned was also unprotected. Complainant did not object to the use of the western draw, as the bridge-seat at that end was built on caissons, and was protected with iron pieces. Defendant introduced affidavits of 13 men experienced in the navigation of the river that the bridge could be completely protected by lines of piling outside the pier and bridge-seat. Complainant's manager and engineer made affidavit that this would cause too great a pressure of water on the bridge, injure the channel, etc. It also appeared that in all the years defendant had navigated the river its boats had caused but a single accident to the bridge, and then the damage was slight. *Held,* that complainant failed to show either that its bridge was properly constructed, or that defendant's navigation of the river was dangerous to the bridge, and that the injunction would be denied.

In Equity. On motion for injunction *pendente lite.*

Suit by the Texas & Pacific Railway Company to restrain the Interstate Transportation Company from taking a larger tow than two barges through the draw of complainant's bridge, at high water.

*Howe & Prentiss,* (*W. W. Howe,* of counsel,) for complainant.

*J. D. Hornor,* for defendant.

PARDEE, J. Assuming that the case made by the bill is one that is within the jurisdiction of this court sitting as a court of equity, and presents a case for equitable relief, still it appears on this hearing that two important facts, incumbent upon the complainant to establish, are left in doubt, if not actually disproved, to-wit: That the complainant's bridge is properly constructed and guarded so as to interfere as little as possible with the free and safe navigation of the Atchafalaya river; and that the actual navigation by the defendant of the said river, with its tow-boats and barges in each tow to the number of six, is dangerous to the safety of the bridge. It appears that the bridge-seat at the eastern end of the bridge is constructed of wooden piles driven in the river, and that there is no protection, by way of outer piling and guards, to prevent any steam-boat or tow from colliding directly with these wooden supports of the bridge, and, when the river is very high, with the bridge itself; and that the pier in the middle of the stream, on which the bridge turns, is also unprotected with sufficient piles and guards. Defendant produces 13 affidavits of experienced men in the steam-boat business, generally engaged in, and familiar with, the navigation of the Atchafalaya river, to the effect that the bridge is not a suitable bridge for the purpose for which it is intended, by reason of the fact that, to be properly constructed and protected, it should have a line of piling from the outside upper corner of the eastern bridge-seat running diagonally up the river to the shore, which should be planked; and that the same precaution should be taken with the pier on which the bridge turns

in the middle of the stream, which would then make a funnel through which boats and water-craft of all kinds could pass without injury to themselves or the said bridge; and that if such precautions were taken it would insure perfect protection to the bridge itself and make navigation absolutely safe. The complainant meets this point with an affidavit of John A. Grant, general manager of the complaining company, a civil engineer of well-established reputation, to the effect that the plan of protecting the bridge by the piling described is impracticable in the Atchafalaya river and similar streams; that it is not adopted at Morgan City bridge; that the effect of it would be to press the current against its curves, and destroy it, or push it over; that it would injure the channel, bank up the water, and create additional eddies; also cause the water to eat out and undermine the supports, not only of such works, but of the bridge itself. Of course, this is a matter upon which the court has no expert knowledge, and can only be governed by the showing made by the parties. The weight of evidence on this showing is against the complainant company. The affidavit of Vice-President and General Manager Grant, which is the main support of the complainant's case, contains this statement:

"Deponent further states that while the tows of defendant might pass through the western side of the draw, which has iron pieces on both sides, with safety to the bridge, they insist on passing through the eastern side of the draw, where, on the eastern side thereof, the bridge-seat is of wood."

Counsel for complainant, on the hearing, stated to the court that there was no objection whatever to the use of the west side of the draw, as there was no danger to be apprehended from such use, no matter how many barges the defendant's tugs might undertake to tow through. An inspection of the drawings of the bridge presented by the defendant shows that the west bridge-seat is built upon caissons, which are apparently strongly made and well founded, and fully able to withstand collision with any tow of coal-barges. It would seem from these facts that the objection made by the defendant to the construction of the bridge as incomplete is well founded. If it is impracticable, for the reasons stated by General Manager Grant, for the complainant to put out the pilings and guards mentioned in defendant's affidavits as necessary for the protection of the eastern end of the bridge, it would seem that there is nothing to hinder, except, perhaps, expense, putting the eastern bridge-seat on as substantial a foundation as the western, to-wit, on caissons, with iron pieces on both sides; in other words, if the western bridge-seat, on caissons with iron pieces on both sides, is properly made and is strong enough, as is admitted, to resist collisions from tows with any number of boats, why should not the eastern bridge-seat, in the interest of navigation and with a view to obstruct the stream as little as possible, be constructed in the same way?

The affidavits presented by the defendants—all, as stated above, by experienced men in the steam-boat business, generally engaged in, and familiar with, the navigation of the Atchafalaya river—are to the further

effect that there is actually no danger to the complainant's bridge from the towing of defendant's barges in the usual manner through the said draw; that it has been continuously done since the construction of the bridge, and during the yearly high-water in the river, without accident of any kind to the bridge, with the single exception stated in complainant's bill, which exception did not inflict any material injury on the bridge, and generally without accident to the boats and barges towed through. The complainant's affidavits, on the same point, (two in number,) state apprehensions largely, and, outside of the fact that one barge did slightly collide with the bridge-seat, do not set forth specific facts. The claim made in the bill, and in General Manager Grant's affidavit, "that the danger of taking three barges through at the present extraordinary stage of high water is generally enhanced by the width of the tow combined with its length. The current of the Atchafalaya river at that point is of great velocity, much more than that of the Mississippi river. It is a torrent, and full of eddies. If a tow of three barges is diverted, as it is apt to be, from a direction parallel with the stream, the danger of striking the bridge is excessive, and at high water the impact would be on the upper portion of the bridge or bridge-seat, when the liability of the injury is excessive,"—is fully met by defendant's affidavits to the effect that such swinging of the entire tow in a direction across the opening of the bridge, tending to strike and break said bridge, is highly improbable and hardly possible, as the boats of the defendant company are in the habit of running a stern line to the shore, and there fastening it, which makes it impossible for the tow to swing. In fact the case is so left, on the showing made, that the court cannot say that it is actually dangerous to the safety of complainant's bridge that the defendant should tow through, at the present stage of high water, any number of barges in one tow up to the number of six. It also appears, by the affidavits presented by the defendant, that the insurance companies taking risks upon the boats and barges towed through the complainant's bridge approve of the number of barges towed by the defendant, provided they do not exceed three coal-boats or more than six coal barges at any one time; and this, notwithstanding the character of the bridge, with the extremely high water, and the rapidity of the current. On the whole case, I am of the opinion that the injunction *pendente lite* asked for should be refused, and the restraining order heretofore granted should be dissolved, and it is so ordered.